ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Stephen T. Owens
State Public Defender

J. Michael Sauer
Deputy Public Defender
Indianapolis, Indiana

**FILED**

Jul 12 2012, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 69S05-1201-PC-6

STATE OF INDIANA,

*Appellant (Respondent below),*

v.

STEVEN RAY HOLLIN,

*Appellee (Petitioner below).*

Appeal from the Ripley Circuit Court, No. 69C01-0802-PC-001
The Honorable Carl H. Taul, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 69A05-1101-PC-113

**July 12, 2012**

**Rucker, Justice.**

Steven Ray Hollin filed a petition for post-conviction relief alleging prosecutorial misconduct and ineffective assistance of trial counsel. The post-conviction court granted relief and the State of Indiana appealed. The Court of Appeals reversed. We granted transfer.

**Facts and Procedural History**[1]

A recitation of the essential facts in this case was set forth in our opinion on direct appeal as follows:

> Eighteen-year-old Steven R. Hollin was released from jail on November 1, 2005. Less than a week later, he and Nathan Vogel ("Vogel") devised a plan to burglarize homes in a rural portion of Ripley County, Indiana. They planned to knock upon doors to locate unoccupied homes, from which they would steal money. On the morning of November 8, 2005, the two men ventured out by foot along a road in Ripley County. The first residence they approached was occupied. A woman answered the door, and to avoid suspicion Hollin and Vogel asked for directions to Greensburg, Indiana. They then left and continued their search for an unoccupied house. The next home they reached appeared to be empty. To be certain, Hollin and Vogel knocked upon both the front and back doors before entering the garage and proceeding into the kitchen. While Hollin remained in the kitchen, Vogel entered a bedroom. Vogel took a camera bag containing approximately six hundred dollars. The two then left the home, walking back toward town. At this point, the woman who had provided directions to Greensburg noticed them and called police to report this suspicious activity.
>
> Batesville Police Department Lieutenant Jeff Thielking responded to the call and recognized Hollin. He became suspicious about the possibility of criminal activity because, although it was approximately sixty-six degrees outside, Vogel wore a heavy winter coat and appeared to be hiding something inside of it. Vogel asserted that their car had broken down along the road, but Lieutenant Thielking had not seen any disabled vehicles in the vicinity. Lieutenant Thielking also knew of several recent burglaries in the area. Noting the name of Al Wuestefeld on the camera bag Vogel was carrying, Lieutenant Thielking arrested both men. A telephone call to the Wuestefeld residence confirmed

[1] "Tr." refers to the trial transcript. "PC-Tr." refers to the transcript of the post-conviction proceedings. "PC-Ex." refers to the exhibits entered into the post-conviction proceedings.

2

that it had been burgled. Hollin and Vogel subsequently confessed.[2]

Hollin v. State, 877 N.E.2d 462, 463-64 (Ind. 2007).

On November 10, 2005, the State initially charged both Hollin and Vogel with burglary as a Class B felony and theft as a Class D felony. Hollin was also charged as a habitual offender. On July 11, 2006, the State amended Hollin's theft charge to conspiracy to commit burglary as a Class B felony. A jury trial began August 8, 2006. The jury convicted Hollin of conspiracy to commit burglary and adjudged him a habitual offender. After conducting a sentencing hearing, Judge Carl H. Taul found one aggravating factor – Hollin's criminal history – and one mitigating factor – his young age. The trial judge then sentenced Hollin to the maximum term of twenty years for the conspiracy conviction, enhanced by twenty years for the habitual offender adjudication, for a total term of forty years.

On direct appeal Hollin raised two issues, one of which was whether the trial court properly sentenced him. In an unpublished memorandum decision, the Court of Appeals rejected Hollin's arguments and affirmed the judgment of the trial court. Hollin v. State, No. 69A01-0609-CR-401 (Ind. Ct. App. Mar. 29, 2007). We granted transfer and affirmed Hollin's convictions, but finding his forty-year sentence inappropriate we revised his sentence to ten years for conspiracy to commit burglary enhanced by an additional ten years as a habitual offender, for a total executed term of twenty years. See Hollin, 877 N.E.2d at 465-66.

Hollin filed a *pro se* petition for post-conviction relief on February 25, 2008. Amended by counsel on August 16, 2010, the petition alleged prosecutorial misconduct and a number of claims alleging ineffective assistance of trial counsel. Judge Carl H. Taul, the same trial judge that presided over Hollin's jury trial, presided over the post-conviction proceedings. The trial judge granted Hollin's petition, reversed his conviction, and ordered a new trial. The State

---

[2] Although the record shows that both Hollin and Vogel gave statements to an Officer of the Batesville Police Department that could reasonably be interpreted as implicating themselves in a burglary, it is incorrect to say that either man actually "confessed" to the offense. This inaccurate characterization of the record was raised for the first time at the hearing on Hollin's petition for post-conviction relief. As will become apparent later in this opinion it has some bearing on the outcome of this appeal.

appealed.  In an unpublished memorandum decision, the Court of Appeals reversed the judgment of the post-conviction court.  State v. Hollin, No. 69A05-1101-PC-113 (Ind. Ct. App. Aug. 24, 2011).  Having previously granted transfer we affirm the judgment of the post-conviction court. Additional facts are set forth below.

### Standard of Review for Post-Conviction Proceedings

Post-conviction proceedings do not provide criminal defendants with a "super-appeal." State v. Holmes, 728 N.E.2d 164, 168 (Ind. 2000).  Rather, they provide a narrow remedy to raise issues that were not known at the time of the original trial or were unavailable on direct appeal.  Id.  "The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence."  Ind. Post-Conviction Rule 1(5).  When the State appeals a judgment granting post-conviction relief, we review using the standard in Indiana Trial Rule 52(A):

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.

State v. Cooper, 935 N.E.2d 146, 149 (Ind. 2010).  The clearly erroneous standard of review is a review for sufficiency of the evidence, and we neither reweigh that evidence nor determine the credibility of witnesses.  Instead, we consider only the probative evidence and reasonable inferences supporting the trial court's judgment.  State v. Dye, 784 N.E.2d 469, 471 (Ind. 2003). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "a post conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made."  Ritchie v. State, 875 N.E.2d 706, 714 (Ind. 2007) (quoting Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000), cert. denied, 534 U.S. 830 (2001) (table)).

4

**Standard of Review for Ineffective Assistance of Counsel**

To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient, that is, falling below an objective standard of reasonableness and denying defendant the right to counsel guaranteed by the Sixth Amendment. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). Second, the defendant must show that the deficient performance prejudiced the defense by establishing a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. We afford counsel considerable discretion in choosing strategy and tactics, and "[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." Id.

**Discussion**

The evidence before the post-conviction court reveals the following. After being arrested Hollin was transported to the Batesville Police Department by Officer Stanley Holt, who read Hollin his Miranda rights and asked Hollin questions about the alleged burglary. Hollin stated he didn't have any knowledge about a house being broken into and denied any involvement. Vogel and Hollin both gave tape recorded statements. Vogel told Officer Holt that he entered the Wuestefeld house intending to use the telephone, but then went into the master bedroom and emptied a big jar of change into a camera bag he found. PC-Tr. at 43. He did not implicate Hollin in a plan to burglarize the home. Hollin told Officer Holt that Vogel needed to find a telephone and suggested they go to the Wuestefeld residence, but no one answered the door. Noting the door was unlocked, Vogel entered the residence and Hollin followed him inside. When Vogel left the room, Hollin said he waited in the kitchen for approximately two minutes until Vogel returned with a pack. Then they left the residence. PC-Ex. at 233-34. Notably, Hollin neither declared that he entered the residence intending to take property therefrom nor that he knew Vogel intended to do so.

5

On November 10, 2005, the State initially charged both Hollin and Vogel with burglary as a Class B felony and theft as a Class D felony. Hollin was also charged as a habitual offender. On July 11, 2006, the State amended Hollin's theft charge to conspiracy to commit burglary as a Class B felony. Thereafter Vogel entered an agreement with the State in which he pleaded guilty to theft as a Class D felony and the burglary charge was dismissed. On February 21, 2006, the trial court sentenced Vogel under the terms of the plea agreement to 545 days imprisonment, with all time not already served suspended to probation. If Vogel successfully completed his probation, then his felony theft conviction would be reduced to a Class A misdemeanor.

At the time he was charged in this cause, Vogel had a pending theft charge in neighboring Decatur County. On March 1, 2006, Vogel pleaded guilty to the theft charge and was sentenced to eighteen months' imprisonment, with all but sixty days suspended to probation. On May 16, 2006, Vogel was charged with battery as a Class C felony in Decatur County. On May 25, 2006, petitions to revoke Vogel's suspended sentences were filed in both Ripley and Decatur Counties.

Shortly after the State amended Hollin's theft charge to conspiracy to commit burglary Officer Holt and Ripley County Chief Deputy Prosecutor Ryan King met with Vogel in the Ripley County Jail. Vogel had originally contended that Hollin was unaware of Vogel's theft until after they had left the burglarized home. In jail, however, for the first time Vogel declared he and Hollin had agreed in advance to look for houses to break into and burglarize. Officer Holt and Deputy Prosecutor King met again with Vogel on August 2, 2006. At the time of these meetings, Deputy Prosecutor King knew there was a petition in Ripley County to revoke Vogel's probation, and that the reason for the petition was the pending Class C felony battery charge in Decatur County. On August 8, the first day of trial, the trial court granted the State's motion to dismiss the charge of Burglary against Hollin, leaving only the charge of conspiracy to commit burglary.

During opening statement Hollin's trial counsel declared if Vogel testified that "this was some kind of a plan, this will be the first time he's come up with that story," suggesting that counsel was unaware of Vogel's jailhouse statement to Holt and King. Tr. at 74. Vogel

proceeded to testify that he and Hollin had agreed the night before the burglary to find a home to burglarize. Vogel acknowledged that he had been convicted of theft in Decatur County after he and Hollin had been arrested in the present case. However, trial counsel did not inquire into Vogel's pending Class C felony battery charge or the pending petitions to revoke Vogel's probation in both Ripley and Decatur counties.

The statement Hollin gave to Officer Holt on the day of his arrest was played to the jury. Hollin's trial testimony was consistent with his statement. He testified that he thought Vogel knew the residents of the home, and that Vogel did not respond when he asked Vogel what was going on. According to Hollin, he only realized the full extent of what had happened when Vogel showed him the items he had taken from the house. Hollin specifically denied having any plan to break into the house with Vogel.

At his hearing for post-conviction relief Hollin made a number of claims alleging ineffective assistance of counsel, one of which we find particularly compelling, namely, counsel failed to present evidence that would have impeached Vogel's credibility. Specifically, Hollin alleges that trial counsel should have elicited the details of Vogel's plea agreement and sentencing during cross-examination. The post-conviction court found that trial counsel knew, or should have known by reasonable diligence, that Vogel was originally charged with burglary and theft felonies that, but for a plea agreement that eliminated jail time, would have subjected Vogel to a maximum sentence of twenty-three years. Additionally, Vogel's plea agreement provided that his felony was to be reduced to a misdemeanor upon successful completion of probation. However, trial counsel did not employ this information to impeach Vogel. Instead, the jury was only aware that Vogel had pled guilty and was in jail. "Thus," the post-conviction court noted, "the jury likely presumed that Vogel pled guilty to the same charge for which Hollin was being tried, Conspiracy to Commit Burglary, a class B felony, and was serving a lengthy sentence for that offense." Appellant's App. at 128. "The jury had no idea that Vogel, the only person who took any property from the Wuestefeld residence, avoided a potential 23-year sentence by pleading guilty and was given probation." Appellant's App. at 128.

7

Trial counsel testified that he did not question Vogel about his plea agreement because he didn't want to "make the trial about somebody else rather than about [my] own client." PC-Tr. at 68. Further, he didn't want to take the "risk of giving the prosecutor even more opportunities to talk about Mr. Hollin's past record even, even by comparing him in some way with Mr. Vogel." PC-Tr. at 68. Trial counsel elaborated that he did not want to "open the door" to Hollin's criminal history by asking questions about Vogel's criminal history. PC-Tr. at 69. The post-conviction court was not persuaded that this was sound reasoning. See Roche v. State, 690 N.E.2d 1115, 1126 (Ind. 1997) (noting that a matter of trial strategy "cannot form the basis for establishing ineffective assistance of trial counsel *unless there was no sound basis* for not pursuing the strategy" (emphasis added)). Instead, the court found that the case against Hollin was "essentially a credibility contest" that relied upon one question: Was there an agreement? Appellant's App. at 137. "Thus, any evidence bearing on the respective credibility of Vogel and Hollin was critical to the outcome of this jury trial." Appellant's App. at 137. We agree with this assessment. More importantly, the State has not demonstrated that the post-conviction court's finding in this regard is clearly erroneous.

In addition to concluding Hollin was entitled to a new trial because of the ineffective assistance of trial counsel, the post-conviction court also concluded Hollin was entitled to a new trial because of prosecutorial misconduct. In particular the trial court found that the jury did not know: there was a pending petition to revoke Vogel's Ripley County probation; Vogel's Decatur County theft conviction was also a Class C felony that would be reduced to a misdemeanor if he completed probation successfully; there was a pending petition to revoke Vogel's Decatur County probation; there was a pending charge against Vogel in Decatur County for battery with a deadly weapon, a Class C felony; and that Vogel did not implicate Hollin in the burglary until after he was charged with battery with a deadly weapon and two petitions to revoke his probation were filed. According to the post-conviction court "the State never disclosed this information" in violation of Brady v. Maryland, 373 U.S. 83 (1963). Appellant's App. at 131.

Under Brady, the State has an affirmative duty to disclose material evidence favorable to the defendant. "To prevail on a Brady claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence

8

was material to an issue at trial." Minnick v. State, 698 N.E.2d 745, 755 (Ind. 1998) (citing Brady, 373 U.S. at 87). Evidence is material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id.

Under the first prong of the Brady analysis, the post-conviction court found that trial counsel was not aware of Vogel's pending criminal matters or Vogel's pretrial statement and change of story. See Appellant's App. at 121 (citing Tr. at 74 ("Nobody can control what [Vogel is going to] say today, but if he tries to say today that this was some kind of a plan, this will be the first time he's come up with that story.")). Under the second prong, we agree with the post-conviction court that the undisclosed evidence "was favorable to Hollin because it was impeaching – it showed a motivating factor for Vogel to cooperate with the State that would have affected the jury's assessment of his credibility." Appellant's App. at 132. Further, Vogel's testimony provided the only evidence that he and Hollin agreed to commit the charged offense. Appellant's App. at 139. Of particular note, Vogel did not implicate Hollin in an agreement to burglarize homes until after Vogel was charged with a new felony and proceedings to revoke his probation had begun – approximately eight months after the crime took place. Under the third prong, given the importance of credibility in this case as discussed above, we conclude there was sufficient evidence for the post-conviction court's conclusion that there was a reasonable probability that had this information been disclosed to the defense, the result of the trial would have been different.

Applying our standard of review to the State's appeal in this case, we conclude that the post-conviction court's judgment is not clearly erroneous and the State has not shown the existence of clear error – that which leaves us with a definite and firm conviction that a mistake has been made. We therefore affirm the post-conviction court's grant of Hollin's petition for post-conviction relief.

## Conclusion

The judgment of the post-conviction court is affirmed. We remand this cause for a new trial.

Dickson, C.J., and Sullivan, David and Massa, JJ., concur.

10