**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 15 2013, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Special Assistant to State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 09A02-1205-PC-356 |
| | ) | |
| JASON BURKETT, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Wayne E. Steele, Special Judge
Cause No. 09D02-0305-FB-25

**January 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

The State of Indiana appeals the post-conviction court's grant of Jason Burkett's petition for post-conviction relief (PCR), presenting the following restated issue for review: Did the post-conviction court err in concluding that appellate counsel rendered ineffective assistance in failing to adequately present two instances of ineffective assistance of trial counsel, based upon trial counsel's failure to call two witnesses at trial?

We reverse and remand.

The underlying facts were set out in this court's disposition of Burkett's direct appeal, as follows:

> Burkett and W.L. were in an on-and-off relationship for about four years and had one son together. W.L. ended the relationship with Burkett in April 2003. However, Burkett and W.L. remained friends for the benefit of their son.
> On May 24, 2003, W.L. agreed to spend the day with Burkett. The day ended with Burkett and W.L. watching a movie at a drive-in theater. W.L. told Burkett she wanted to go home, but Burkett drove to his house instead. When they arrived at Burkett's house, at approximately 1:00 a.m., Burkett and W.L. argued. W.L. wanted to go to sleep and told Burkett that she wanted to go back to Pam Putnam's house, where W.L. had been staying.
> When W.L. tried to sleep on the couch in the living room, Burkett pulled the blanket that covered W.L. and stood before her naked. Burkett then pulled W.L.'s clothes off and pulled her onto the floor. W.L. fought Burkett and told him to stop. Burkett picked W.L. up, carried her to the bedroom, and threw her on the bed. Unbeknownst to W.L., Burkett was recording the events in the bedroom with a video camera. W.L. resisted verbally and physically as Burkett tried to force open her legs with his hands and place his mouth on her vagina. W.L. repeatedly told Burkett to stop and continued to resist. At one point during the struggle, Burkett inserted his fingers into W.L.'s vagina and pinched her cervix, resulting in a half-moon-shaped wound to W.L.'s cervix. Burkett inserted his penis into W.L. and ejaculated. Burkett also inserted a "very large penis shaped toy" into W.L.'s vagina. Transcript at 54-55.
> When Burkett stood up afterward, W.L. curled up on the bed. Burkett checked W.L. for bruises and told her that she had to take a shower, which she did. While in the shower, W.L. heard noises that she recognized as herself pounding on Burkett during the attack. Burkett informed her that if she did not wash herself "good," then he would. Transcript at 58. When W.L. returned to

2

the bedroom, Burkett told her to lean over the bed. Burkett inserted his penis into W.L.'s vagina and ejaculated. Burkett made W.L. take another shower. After W.L.'s second shower, she fell asleep on the bed.

When W.L. awoke the next morning, Burkett took W.L.'s hand and placed it on his penis. Burkett told W.L. if she did not masturbate him he would force himself on her again. W.L. complied. Afterwards, Burkett was playing with the video tape, set it down, and left the room. W.L. tried to hide the video tape in a pillowcase, but Burkett found it.

Burkett and his brother, Robert Burkett, then drove W.L. to Putnam's house. W.L. contacted the police and went to the hospital. On May 25, 2003, the trial court issued a search warrant for Burkett's house and Robert's car. The video tape of the attack ended up in the hands of Burkett's friend, John Thompson. Thompson gave the tape to W.L., who turned it over to the police.

The State charged Burkett with two counts of rape as class B felonies, criminal sexual deviate conduct as a class B felony, two counts of attempted rape as class B felonies, sexual battery as a class D felony, criminal confinement as a class D felony, and possession of marijuana as a class A misdemeanor. Burkett filed a notice of intent to present evidence of past sexual conduct and a motion for severance of offenses. The trial court granted Burkett's motion to sever the charge of possession of marijuana, but denied Burkett's motion to sever the remaining sex offense charges. On May 12, 2004, the trial court granted Burkett's motion to present evidence of the victim's past sexual conduct with Burkett, but denied the admission of evidence that W.L. and Burkett had on one previous occasion videotaped a sexual encounter.

The jury found Burkett guilty of two counts of rape as class B felonies, criminal deviate conduct as a class B felony, sexual battery as a class D felony, and criminal confinement as a class D felony.

*Burkett v. State*, No. 09A02-0410-CR-883, slip op. at 2-5 (Ind. Ct. App. March 28, 2005).

Burkett appealed, challenging the trial court's denial of his motion for severance of offenses, the enhancement and appropriateness of his sentence, and the effectiveness of trial counsel's performance. With respect to the latter issue, Burkett alleged that trial counsel should have presented the issue of the past sexual conduct between W.L. and Burkett, which in turn was relevant to his defense of consent. This court rejected Burkett's claims and affirmed the convictions and sentence. After filing a pro se PCR petition on March 15, 2007,

3

Burkett obtained counsel, who filed a modified PCR petition on December 2, 2008. This petition was denied on April 19, 2011, after several hearings.

Burkett, pro se, commenced an appeal of the denial of his PCR petition. On August 22, 2011, however, he moved to dismiss the appeal without prejudice and remand to the post-conviction court "so that he could reopen the evidence and expand the record to include additional evidence in support of his post-conviction claims." *Appellant's Appendix* at 383. That motion was granted and the matter was returned to the post-conviction court. On September 21, 2011,[1] Burkett filed a verified motion for leave to supplement and/or amend his PCR petition to add a claim of ineffective assistance of post-conviction counsel and supplement his claims of ineffective assistance of appellate counsel. The State opposed this motion and, on November 15, 2011, filed a Motion to Deny and Dismiss All Post-Conviction Proceedings, Motion, etc., in Their Entirety and Motion to Set Hearing. The State claimed that what Burkett proposed to do – essentially, to reopen his PCR endeavors and assert an additional claim for ineffective assistance of post-conviction counsel – "[was] a new and completely separate cause of action, not related to the court's denial of the petition for post-conviction relief, and must be filed separately under a new post-conviction relief petition." *Id*. at 381. The court denied the State's motion and the matter proceeded to a hearing on February 27, 2012.

---

[1] In a pleading entitled "Objection to State's Motion to Deny and Dismiss All Post-Conviction Proceedings, Motions, Etc.", *Appellant's Appendix* at 383, post-conviction counsel claimed Burkett filed what we presume to be these same motions on September *23*. We note, however, that Burkett did file a motion to proceed *in forma pauperis* on September 23. The apparent discrepancy with respect to the date of filing is of no consequence, and we discovered it only in the process of untying the Gordian knot that is the procedural history of Burkett's post-conviction endeavors.

On April 26, 2012, the post-conviction court granted Burkett's PCR petition on two bases. We reproduce the following portion of that order, which explains the court's rationale:

> Trial counsel failed to adequately investigate the case and prepare for trial. More specifically, counsel failed to call Jessica Adkins as a witness at trial. At the post-conviction evidentiary hearing, Adkins testified that had she been called as a witness, she would have told the jury that she had spent the night at Burkett's house on the evening in question, and that she heard nothing unusual that evening. She also saw Burkett leave his bedroom several times that evening. This evidence would cast doubt on the credibility of the victim's testimony at trial that she was unable to call for help or escape from Burkett. By not adequately investigating the case and calling Adkins as a witness at trial, counsel rendered deficient performance. Burkett was prejudiced by counsel's performance; had the jury heard Adkins' testimony that supported an inference that victim consented to sexual intercourse with Burkett that night, he may have been acquitted at trial.
>
> Rather than argue that the trial Court had erred in excluding evidence regarding past sexual conduct between the Petitioner and the victim, on appeal counsel argued that he had been ineffective in filing the Motion required by Indiana Evidence Rule 412 late and without sufficient detail. The appellate Court found that permission to introduce detail evidence had not been denied due to the late filing, but that the Petitioner failed to demonstrate what additional information would have been exculpatory at trial.
>
> Under Indiana Evidence Rule 412, past sexual conduct evidence is generally not admissible. After a hearing the trial Court granted permission to introduce evidence regarding the length of the parties' consensual sexual relationship, but denied permission to introduce details of it, such as the fact that at least one encounter had been tape recorded. However, according to the appellate Court, counsel failed to submit sufficient evidence as an offer of proof to show that the evidence would have affected the verdict.
>
> During the post-conviction hearing the Petitioner's mother and brother, as well as the victim, testified regarding a prior video taped sexual encounter that had enraged the victim. His mother also testified to conversations with the victim about her sexual desires, and she acknowledged that she may have had such discussions with the Petitioner's mother. The important point about the prior recording was the victim's reaction upon learning that others had viewed it,

5

leading to the Petitioner's promise to never record them again, and suggesting a motive for her rape allegation after she found that he had in fact recorded them again.

Trial Counsel should have made an offer of proof with the testimony offered at the post-conviction hearing to then be able to better argue the issue in the direct appeal and obtain a reversal at that time. It is quite possible that the evidence regarding the prior recording and/or the sexual desires conversation would have affected the verdicts.

*Appellant's Appendix* at 442-43. The State appeals from this order.

Pursuant to Indiana Post–Conviction Rule 1(7), either the State or the petitioner may appeal a ruling on a PCR petition. When the State does so, it is premised upon the claim that the post-conviction court erred in concluding that the petitioner sufficiently established one of his claims so as to be entitled to relief. Post-conviction proceedings do not provide criminal defendants with a "super-appeal." *State v. Hollin*, 970 N.E.2d 147, 150 (Ind. 2012). Instead, they provide a narrow remedy to present issues that were not known at the time of the original trial or were unavailable on direct appeal. *State v. Hollin*, 970 N.E.2d 147. "The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence." Ind. Post–Conviction Rule 1(5).

When the State appeals a judgment granting post-conviction relief, we review using the standard in Indiana Trial Rule 52(A):

On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.

*State v. Hollin*, 970 N.E.2d at 150. "The clearly erroneous standard of review is a review for sufficiency of the evidence, and we neither reweigh that evidence nor determine the

6

credibility of witnesses. Instead, we consider only the probative evidence and reasonable inferences supporting the trial court's judgment." *Id*. In the present case, the post-conviction court entered findings of fact and conclusions of law. We do not defer to the post-conviction court's legal conclusions, but its "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. at 151 (quoting *Ritchie v. State,* 875 N.E.2d 706, 714 (Ind. 2007)).

Burkett's PCR claim, and thus the post-conviction court's ruling, was premised upon claims of ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient and that the petitioner was prejudiced thereby. *Kubsch v. State*, 934 N.E.2d 1138 (Ind. 2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). This is the so-called *Strickland* test. Counsel's performance is deficient if it falls below an objective standard of reasonableness and "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id*. at 1147 (quoting *Strickland v. Washington*, 466 U.S. at 687)). To establish the requisite prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). The two elements of *Strickland* are separate and independent inquiries. The failure to satisfy either component will cause an ineffective assistance of counsel claim

7

to fail. *Taylor v. State*, 840 N.E.2d 324 (Ind. 2006). Thus, if it is easier to dispose of such a claim on the ground of lack of sufficient prejudice, that course should be followed. *Landis v. State*, 749 N.E.2d 1130 (Ind. 2001).

The post-conviction court concluded that, ultimately, trial counsel rendered ineffective assistance in conducting an inadequate investigation and, thereby, failing to call Adkins as a witness at trial. According to the post-conviction court, had counsel done so, Adkins would have testified that she was there on the night this incident occurred and did not hear anything unusual at the time, and that she saw Burkett leave his bedroom several times that evening. The court concluded this testimony would have undermined the victim's claim that she was unable to call for help or escape. We believe the post-conviction court overestimated the import of Adkins's proposed testimony.

Robert Burkett, Adkins's boyfriend and the petitioner's brother, lived with the petitioner in the house where the rapes occurred. Robert testified at trial. His testimony of the day's events that preceded the rapes is entirely consistent with the victim's. He testified that he was home when Burkett and the victim arrived by car – Robert's car – around midnight on May 24 and that he (Robert) left shortly thereafter, a few minutes after midnight. He testified that he went to visit Adkins, and that he and Adkins did not return until 5:30 or 6:00 the next morning. Robert testified that he and Adkins went downstairs to the basement, where Robert was staying, and remained down there talking until "probably about eight o'clock in the morning." *Appellant's Appendix* at 190. This is consistent with the victim's testimony that the rapes occurred sometime after Robert left, i.e., when no one was home,

and that "[a]fter everything happened, … Rob and his girlfriend came home and they went downstairs." *Id*. at 63. Robert testified that from 5:30 until 8 a.m., he did not hear anything indicating there was anyone else in the house except when he heard someone walk from Burkett's bedroom to the bathroom, the toilet flush, and that person return to the bedroom.

We cannot discern any relevant and meaningful difference between Adkins's proposed testimony and Robert's testimony. The victim did not describe calling for help or claim that she attempted to escape. Rather, she more or less explained why she did not do so. Therefore, Atkins's testimony to that effect would have merely corroborated those aspects of the victim's testimony. In our estimation, Adkins's proposed testimony would not have added meaningfully to the narrative that the defense sought to establish, i.e., that the sexual activity between Burkett and the victim was consensual. At most, it merely corroborated Robert's testimony, which in turn was not at odds with the victim's account of what occurred while Robert (and thus Adkins) was in the house.

The second basis upon which the post-conviction court ultimately granted Burkett's petition was that trial counsel rendered ineffective assistance in failing to challenge the exclusion of testimony by Burkett's mother and Robert to the effect that Burkett and the victim had on a previous occasion videotaped a sexual encounter that he subsequently had shown to others. This allegedly upset the victim and she made Burkett promise not to videotape their sexual encounters in the future. According to the post-conviction court, had Burkett's mother and brother been permitted to testify on this subject at trial, the jury might have concluded that the victim's rape accusation was motivated by anger at Burkett for

9

breaking the promise to never again videotape their sexual activity.

Once again, we conclude that the post-conviction court overestimated the persuasive value of the testimony in question. We reiterate that in order to justify granting Burkett's PCR petition, this evidence must be such that there is a reasonable probability that had the jury considered the proposed testimony about the prior videotape, it would have reached a different verdict. *See Smith v. State*, 765 N.E.2d 578. That is, such evidence would have altered the calculus on the question of whether the victim consented to the sexual acts depicted on the videotape.

If Burkett's theory of defense is to be believed, the victim was merely play-acting during the incident, i.e., acting out a rape fantasy. The first sexual assault clearly ended while the camera was still recording. It depicted Burkett getting off of the bed, retrieving the still-recording camera, pointing it in the victim's direction, and making comments indicating that the incident had been recorded. There is no dispute that, up to that point, the victim did not know the camera was recording, and perhaps did not even notice it was there. Yet, the victim did not appear to react to Burkett's announcement; she remained curled up in a fetal position on the bed. That is, she continued to act in a manner one would expect from a woman who had just been sexually assaulted. There was no display of a level of anger that would prompt a person to make a false allegation of rape, or indeed any anger at all. There was no indication that the victim felt in any sense in control of the situation. She continued to cower on the bed as long as the camera filmed.

In short, the proposed evidence would not have provided a back-story that suggests a

10

different interpretation of the events depicted on the videotape with respect to the question of whether the victim's participation was voluntary. In fact, the victim's actions, as depicted in the videotape, appear entirely inconsistent with Burkett's theory of defense in several important respects. Therefore, there is no reasonable probability that it would have led the jury to a different conclusion on the question of whether the victim consented to Burkett's sexual acts. Lacking that, i.e., the prejudice element, Burkett's claim of ineffective assistance premised ultimately upon trial counsel's failure to preserve the issue of the admissibility of the evidence regarding the prior videotape must fail. The post-conviction court erred in concluding otherwise.

Having determined that the post-conviction court erred in concluding that Burkett established both elements of *Strickland* with respect to the claims involving the failure to call Adkins and the failure to preserve the issue of the admissibility of evidence about the prior videotape, we reverse the grant of Burkett's PCR petition in those respects. We note, however, that Burkett presented additional grounds for post-conviction relief in his PCR petition that the post-conviction court did not rule upon. Therefore, we remand this cause with instructions to reverse the grant of Burkett's request for relief on the grounds addressed herein, and to consider the remainder of the claims presented in his PCR petition.

Judgment reversed and remanded.

NAJAM, J., and BRADFORD, J., concur.