

FILED

Sep 06 2018, 6:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

David W. Stone, IV
STONE Law Office & Legal
Research
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Respondent*,

v.

Matthew Stidham,

*Appellee-Plaintiff*.

September 6, 2018

Court of Appeals Case No.
18A02-1701-PC-68

Appeal from the Delaware Circuit
Court

The Honorable Kimberly S.
Dowling, Judge

Trial Court Cause No.
18C02-1602-PC-3

**Brown, Judge.**

The State of Indiana appeals the post-conviction court's grant of a petition for post-conviction relief filed by Matthew Stidham. The State raises one issue which we revise and restate as whether the post-conviction court erred by granting Stidham post-conviction relief. We reverse.

## Facts and Procedural History

The relevant facts as discussed in Stidham's direct appeal follow:

> On the night of February 23, 1991, [Stidham] and several of his friends, including the decedent in this case, drove to the decedent's apartment where they drank whiskey and played guitars. They eventually started "trading punches." This evidentially started as horseplay but grew into an angry encounter between [Stidham] and the decedent.
>
> As the fight escalated, the others joined with [Stidham] in beating the decedent. Not only did they beat and kick the decedent, but they also struck him with a wooden club. They then loaded much of the decedent's electronic equipment into his van, gagged him, placed him in the back of the van and drove off. They eventually arrived at a secluded area near the Mississinewa River where the decedent was removed from the van and again beaten and stabbed some forty-seven times before his body was thrown into the river. After visiting with friends, who they told of the killing, [Stidham] and his associates drove into the State of Illinois where they were arrested.

*Stidham v. State*, 637 N.E.2d 140, 142 (Ind. 1994).

A jury trial resulted in the conviction of Stidham for murder, robbery as a class A felony, criminal confinement as a class B felony, battery as a class C felony, and auto theft as a class D felony. *Id.* In February 1993, the Indiana Supreme

Court reversed Stidham's convictions and remanded the case for a new trial. *Id.* (citing *Stidham v. State*, 608 N.E.2d 699 (Ind. 1993)).

[4] After retrial and convictions on all counts, Stidham appealed. *Id.* In that appeal, he contended in part that his 141-year sentence was unreasonable and disproportionate to the crime. *Id.* at 144. He argued "in sharp contrast to his behavior prior to his original sentencing, his behavior in prison had been exemplary, that he had obtained a GED, and that he actively participated in a substance abuse program as certified by a letter to Judge Dailey from Linda Poe[,] the substance abuse supervisor at the institution." *Id.* He also argued that the record disclosed that he was an abused child. *Id.*

[5] In an opinion issued in July 1994, the Indiana Supreme Court concluded: "Given the extreme brutality of the crimes committed in this case, the trial judge was well within his discretion in refusing to mitigate the sentences either on [Stidham's] subsequent conduct in the prison or the abuse he had received as a child." *Id.* The Court observed: "As pointed out by the trial judge, two of [Stidham's] brothers had received the same treatment but had become upstanding citizens in their community." *Id.* The Court concluded that the sentence was defective in one regard, remanded to the trial court for the purpose of vacating the auto theft conviction as it should have been merged

with the robbery conviction, and affirmed the trial court in all other respects.[1]
*Id.*

[6] On February 8, 2016, Stidham filed a verified petition for post-conviction relief contending that his sentence violated the Eighth Amendment of the United States Constitution and Article 1, Section 16 of the Indiana Constitution. On February 12, 2016, the State filed an answer to Stidham's petition, and on October 27, 2016, the court held a hearing. Stidham's counsel offered an exhibit "which is a full and complete transcript, which is a fair and accurate copy of the original and that includes everything from the beginning through the sentencing and all the appendices." October 27, 2016 Transcript at 5. The prosecutor had no objection, and the court admitted it as Petitioner's Exhibit 1. Delonda Lee Hartman testified that Stidham was her student when she was teaching for Ball State University at Indiana State Prison in Michigan City. She stated she thought Stidham was one of those students highlighted in a video titled Cell Block Scholars. Stidham's counsel offered the video as an exhibit, and the prosecutor objected on the basis of relevance. Stidham's counsel argued that the video supports that "juveniles should be treated differently by the Court" and that "juveniles need to have the ability to be reformed." *Id.* at 8-9. The court overruled the objection and admitted the exhibit. Hartman

---

[1] Justice Sullivan, with Justice DeBruler concurring, dissented with respect to the sentence. 637 N.E.2d at 144.

testified that Stidham matured, was very helpful in class, and was an exemplary student.

Stidham indicated that he had "no real formal education" prior to being sentenced but had become a full-time firefighter in prison, taught the biohazard certification program and for an apprenticeship program, and was the firefighter instructor. *Id.* at 12.

On November 29, 2016, he filed proposed findings of fact and conclusions of law, which concluded that his sentence should be ordered reduced to time served. On January 3, 2017, the post-conviction court entered an order granting Stidham's petition and stating in part:

\* \* \* \* \*

2. [Stidham] was seventeen (17) years old at the time of the offense.

\* \* \* \* \*

8. The Petition raises a single issue for consideration by this Court: Whether [Stidham's] sentence violates the 8th Amendment of the US Constitution and Article 1 Sec 16 of the Indiana Constitution prohibiting cruel and unusual punishment.

9. Based upon the sentence imposed by this Court, if [Stidham] is still alive, he will be eighty two (82) years of age when his sentence is complete.

10. Since [Stidham] was sentenced much research has been done on the brains of juveniles and their ability to change.

11. Neither the trial court nor the Supreme Court had access to this information and research since it did not exist at that time.

12. Furthermore, [Stidham's] actions and progress in prison is a testament to this research.

13. There is no question that the crimes committed were heinous.

14. The question for the Court, however, is whether the sentence imposed was excessive in light of the research done and cases decided in the meantime.

CONCLUSIONS OF LAW

15. The United States Supreme Court in *Miller v. Alabama*, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) held that the imposition of mandatory life sentences without parole on juveniles is forbidden.

16. *Miller* requires the sentencing judge to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" [132] S. Ct. at 2469.

17. While Stidham was not sentenced to life without parole, it is the functional equivalent.

18. Other courts in other jurisdictions have held similarly in cases involving juveniles. *Hayden v. Keller*, 134 F.Supp.3d 1000 (E.D.N.C. 2015) cites several cases where de facto life sentences for juveniles were held to be cruel and unusual punishment in violation of the 8th Amendment of the Constitution.

19. The Indiana Supreme Court relied on *Miller* in two separate 2014 cases.

20. In *Brown v. State*[,] 10 N.E.3d 1 (Ind. 2014)[,] and *Fuller v. State*, [9 N.E.3d 653 (Ind. 2014),] the Court held that imposition of juveniles of two consecutive 75 year sentences for two (2) murders was improper.

21. The Court in those cases discussed the U.S. Supreme Court's observations that first, a juvenile lacks maturity and has an underdeveloped sense of responsibility; second that they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure, and they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings; and third a child's character is not as well formed as an adult's and his actions are less likely to be evidence of irretrievable depravity.

22. The Court in *Fuller* found that the maximum consecutive sentence means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the juvenile convict, he will remain in prison for the rest of his days.

23. As a result, this Court finds that [Stidham's] sentence was excessive in light of his age at the time of the offense and his Petition should be GRANTED.

Appellant's Appendix Volume 2 at 51-52 (underlining omitted).

[9] The State appealed. In a memorandum decision, we held that the post-conviction court had not entered "an appropriate order with respect to the conviction or sentence" or complied with Section 6 of Ind. Post-Conviction Rule 1 and we remanded for further proceedings. *See State v. Stidham*, No. 18A02-1701-PC-68, slip op. at 8 (Ind. Ct. App. June 14, 2017).

[10]     The State petitioned for rehearing and argued that this Court should have addressed its arguments that Stidham's sentencing claim was barred from review by procedural default, that his sentence did not violate the Eighth Amendment, and that the post-conviction court could not revisit a sentence found not unreasonable or disproportionate by the Indiana Supreme Court. The State also argued that we should grant rehearing to clarify a jurisdictional issue, i.e., whether this Court had retained jurisdiction or whether a new notice of appeal would be necessary. We granted rehearing to clarify that we retained jurisdiction and remanded for the post-conviction court to issue a sentencing order. *See State v. Stidham*, No. 18A02-1701-PC-68 (Ind. Ct. App. October 18, 2017).

[11]     On December 13, 2017, the State filed a Verified Motion for Writ in Aid of Appellate Jurisdiction asserting that the post-conviction court scheduled a resentencing hearing for March 8, 2018, and requested that this Court order the post-conviction court to issue an amended post-conviction order within fifteen days specifying the relief granted so that this Court could adjudicate the State's appeal and to refrain from holding new sentencing proceedings. Stidham filed a response. On January 20, 2018, this Court entered an order denying the State's motion and stating in part:

> In an affidavit attached to [Stidham's] Response, Stidham's counsel asserts that an unrecorded conference occurred on October 26, 2016, at which he and the deputy prosecutor were present and at which it was agreed that the case would proceed in two phases, that the first phase was to be limited to whether or not Stidham was entitled to post-conviction relief, and that the

second phase was to be devoted to evidence on what sentence should be imposed if it was determined by the trial court in the first phase that the defendant was entitled to post-conviction relief. *See* Affidavit of John C. Reeder at 1. Neither party previously mentioned the October 26, 2016 conference or that the parties had agreed to proceed in two phases, which we find disappointing. We disapprove of what appears to be a failure of candor with this Court in the briefing process.

January 10, 2018 Order at 2.

[12] On March 15, 2018, the post-conviction court held a resentencing hearing and incorporated prior proceedings at the request of Stidham's counsel. Cynthia Morris, Stidham's aunt, testified that since he had been incarcerated Stidham received his GED, his associate's degree, and his bachelor's degree, that he became the captain of the fire department, and that he was "completely changed." March 15, 2018 Transcript at 7. She testified that Stidham suffered severe abuse from other family members and foster homes including starvation, someone trying to make him eat dog feces, being struck, and being stabbed with scissors. She offered that Stidham could live with her sister and stated that he had several job offers, that she spoke with people in the community who were aware that he would be eligible to work with volunteer fire departments, and that his family would help him financially.

[13] Stidham testified that he continued his education and training since the last hearing and had become certified as a module A and a module B firefighter, which includes technical rescue awareness, hazardous response operations, and first responder awareness. When asked what had changed since the earlier sentencing hearings in the 1990s, he answered in part:

> I would like to say that if there's one (1) thing that changed the most is, you know, as a kid I was given a lot of opportunities. People tried to help me. I refused it. You know, I destroyed every relationship I ever come in contact with. And the biggest thing that I think I've overcome is the fact that when I see opportunities I try to take advantage of them. You know, even when I fell or fumble, you know, I, I pick myself back up and I put myself back on the right track. And that was something that I was incapable of doing as a kid.

*Id.* at 16. He testified he had not received any conduct reports for any acts of violence while incarcerated. Stidham's institutional behavior listed in Defendant's Exhibit B included: refusing to obey an order in 1993, smoking where prohibited in 1997, refusing to obey an order in 1998, unauthorized use or possession of an electronic device in 2007, disruptive, unruly, rowdy conduct in 2009, and unauthorized use or possession of an electronic device in 2014.

[14] On cross-examination, Stidham testified that he was sixty days shy of turning eighteen years old when the offense occurred. On redirect examination, he stated that one of his co-defendants received a sentence modification to be released from the Department of Correction and another received a plea agreement for only thirty-five years incarceration.

[15] After Stidham rested, the State presented the testimony of Mary Ann Barker, who testified that she had known Daniel Barker, the victim in this case, and that her husband was the victim's brother. She stated that Daniel was a "quiet, soft spoken person that wouldn't hurt anybody," "just wanted a friend," and "thought he found friends." *Id.* at 26. When asked if anything had lessened the

pain of the murder that occurred in 1991, she answered: "No, it has not." *Id.* at 27. She stated that her husband was not emotionally able to testify, and that she thought Stidham should serve his full sentence.

[16] That same day, the court entered an order, stating:

> This Court granted that petition for post-conviction relief on June 21, 2017.
>
> The Court now proceeds to re-sentencing.
>
> The Court has considered the pre-sentence investigation report with the attached addendum from the 1993 sentencing, together with the evidence as presented and the final comments of counsel.
>
> The Court, being duly and sufficiently advised in this cause, now finds as follows:
>
> Circumstances Supporting an Enhanced Sentence:
>
> 1. The defendant has a lengthy history of juvenile criminal activity, which ultimately resulted in his commitment to the Indiana Boys School on two occasions; and the Court gives this factor some weight.
>
> 2. The defendant is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility, and prior attempts at correctional treatment and rehabilitation through juvenile probation and incarceration has not been successful; and the Court gives this factor some weight.
>
> 3. Imposition of a reduced or suspended sentence would depreciate the seriousness of the crime; and the Court gives this factor some weight.

4. The victim was likely mentally challenged; and the Court gives this factor some weight.

5. The crime was particularly devastating to the victim's family members, and or relatives; and the Court gives this factor some weight.

6. The defendant took substantial steps to conceal the crime and evade capture; and the Court gives this factor some weight.

7. While incarcerated in the Madison County Jail, the defendant was involved in an escape attempt on May 16, 1991[,] and was placed on lockdown status; and the Court gives this factor some weight.

8. This crime was savagely committed. The acts build upon themselves, and the defendant had the opportunity to stop his actions at any time, however, he chose to proceed to the ultimate level without stepping away; and the Court gives this factor some weight.

Circumstances Supporting a Reduced Sentence:

1. The defendant was of youthful age, that being 17 years of age and this is his first felony conviction as an adult; and the Court gives this factor some weight.

2. The defendant was severely and brutally abused by his adopted mother while he was growing up; and the Court gives this factor significant weight.

3. The defendant was first sentenced in 1991, and then again in 1993. Between those dates the defendant served approximately two (2) years at the Indiana Department of Corrections. During that time, the defendant earned his GED; and the Court gives this factor some weight.

4. Also during the two years prior to the re-sentencing in 1993, the defendant's attitude completely had changed, he had learned why he had had such a difficult time getting along with others

and was very polite during the second interview with probation; and the Court gives this factor some weight.

5. The defendant had learning difficulties and was not well educated; and the Court gives this factor some weight.

6. Also during the two years at the Department of Corrections between sentencings, defendant had taken advantage of substance abuse counseling and general counseling; and the Court gives this factor some weight.

In weighing the above factors, the Court finds the circumstances supporting an enhanced sentence outweigh the circumstances supporting a reduced sentence.

The nature of the offense would support an enhanced sentence. Defendant participated with others to confine another, kill him brutally and steal items. All of these were senseless acts.

Defendant's character supports the advisory sentence. Defendant has a juvenile history, albeit a lengthy one, and no prior adult convictions. The Court is going to take this opportunity to point out the obvious: we are here today, almost 25 years after the second sentencing. While the Court in re-sentencing must go back and look at the laws and circumstances as of 1993, we cannot ignore the accomplishments of the Defendant in prison during that 25 years, and the Court is doing so as part of the Defendant's character. The Defendant has been a model prisoner. He has earned his Associates and Bachelor's Degrees from Ball State University, was on the Dean's List every semester, graduated Magna Cum Laude, became a certified firefighter and has spent 15 years as a paid full time firefighter through the Department of Corrections, earned additional certifications as a firefighter such that he is only one (1) of (11) people certified in the United States as a Structural Firefighter, is an instructor in firefighting, assists with education programs, and participated in a documentary about the positive changes people

can make in the Department of Corrections, produced by Ball State University.

Therefore, as to Count 1, Murder, a felony, Defendant is committed to the custody of the Indiana Department of Correction for a period of sixty (60) years executed.

As to Count 2, Robbery, a Class A Felony, the Defendant is committed to the custody of the Indiana Department of Correction for a period of fifty (50) years, executed, which shall be served concurrently with the sentence imposed under Count 1.

As to Count 3, Criminal Confinement, a Class B Felony, the Defendant is committed to the custody of the Indiana Department of Correction for a period of twenty (20) years, executed, which shall be served concurrently with the sentence imposed under Counts 1 and 2.

As to Count 4, Battery, a Class C Felony, the Defendant is committed to the Indiana Department of Correction for a period of eight (8) years, suspended, which shall be served consecutively to the sentences imposed under Counts 1, 2, and 3.

The Defendant should be given credit for nine thousand eight hundred eighty-one (9,881) days of jail time served as follows:

> The original 851 days assessed at the time of sentencing in 1993
>
> 06/24/1993-12/31/1993 191 days
>
> 01/01/1994-03/14/2018 8839

Together with one thousand two hundred seventy-six (1,276) days granted as a time cut by the Indiana Department of Corrections while incarcerated, for a total of eleven thousand one hundred fifty-seven (11,157) days served.

Defendant shall be given Class I Credit Time for the jail time credit of nine thousand eight hundred eighty-one (9,881) days.

The Court finds the executed sentence imposed under Count 1 has been satisfied.

Further, the Court finds that the Defendant has served two hundred seven (207) days of the eight (8) years imposed under Count 4. Therefore, the Defendant shall serve seven (7) years and one hundred fifty-eight (158) days of the eight (8) years suspended sentence on supervised probation. The Defendant shall pay all associated costs and fees associated with supervised probation.

This Court assessed costs of $113.00 at the time of sentencing in 1993, but found the defendant indigent. This Court will not assess any further fines or costs.

* * * * *

The State of Indiana requests the Court to stay the portion of the Order releasing the Defendant to supervised probation pending resolution of the appeal that is currently before the Indiana Court of Appeals.

Argument heard and concluded.

The Court denied the State's request.

Defendant ordered released in this matter.

March 15, 2018 Order on Sentencing Hearing at 1-4.[2]

### Discussion

[17] The issue is whether the post-conviction court erred by granting Stidham post-conviction relief. "Post-conviction proceedings are not super-appeals and

---

[2] On March 16, 2018, this Court granted the State's motion for stay.

provide only a narrow remedy for subsequent collateral challenges." *State v. Oney*, 993 N.E.2d 157, 161 (Ind. 2013) (quoting *State v. Cooper*, 935 N.E.2d 146, 148 (Ind. 2010)). Generally, freestanding claims are unavailable in post-conviction proceedings. *See Reed v. State*, 866 N.E.2d 767, 768 (Ind. 2007) (holding that only issues not known at the time of the original trial or issues not available on direct appeal may be properly raised through post-conviction proceedings); *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002) (holding that in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal" and that it is wrong to review the petitioner's fundamental error claim in a post-conviction proceeding); *Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001) (holding that post-conviction procedures do not provide a petitioner with a "super-appeal" or opportunity to consider freestanding claims that the original trial court committed error and that such claims are available only on direct appeal), *reh'g denied*, *cert. denied*, 534 U.S. 1136, 122 S. Ct. 1082 (2002).

[18] Where, as here, the State appeals a judgment granting post-conviction relief, we review using the standard in Indiana Trial Rule 52(A). *Oney*, 993 N.E.2d at 161.

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.

*Id.* (quoting *State v. Hollin*, 970 N.E.2d 147, 150 (Ind. 2012)). Under the clearly erroneous standard of review, we review only for the sufficiency of the evidence. *Id.* We neither reweigh the evidence nor determine the credibility of witnesses. *Id.* We consider only the probative evidence and reasonable inferences supporting the judgment and reverse only on a showing of clear error. *Id.* Clear error is "that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* We do not defer to the post-conviction court's legal conclusions. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014).

[19] The State argues that Stidham's challenge of his sentence is barred by *res judicata*. Stidham argues that his direct appeal addressed whether double jeopardy barred some of his sentences and whether his sentence was unreasonable. He argues that no claim was made that his sentence was unconstitutional.

[20] "Res judicata is a legal doctrine intended 'to prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies.'" *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014) (quoting *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013)). "It applies 'where there has been a final adjudication on the merits of the same issue between the same parties.'" *Id.* (quoting *Gayheart v. Newnam Foundry Co., Inc.*, 271 Ind. 422, 426, 393 N.E.2d 163, 167 (1979)). The Indiana Supreme Court has held:

Stated in more detail:

> 1. the former judgment must have been rendered by a court of competent jurisdiction;
>
> 2. the former judgment must have been rendered on the merits;
>
> 3. the matter now in issue was or might have been determined in the former suit; and
>
> 4. the controversy adjudicated in the former suit must have been between the parties to the present action or their privies.

*Id.* (quoting *Chemco Transp., Inc. v. Conn*, 527 N.E.2d 179, 181 (Ind. 1988)). If any element is absent, *res judicata* does not apply. *Id.* "[I]ssues decided on direct appeal may not be collaterally attacked on post-conviction review." *Allen v. State*, 749 N.E.2d 1158, 1178 (Ind. 2001), *reh'g denied*, *cert. denied*, 535 U.S. 1061, 122 S. Ct. 1925 (2002).

[21] In Stidham's brief filed with the Indiana Supreme Court on November 22, 1993, he specifically cited the Eighth Amendment and Article 1, § 16 of the Indiana Constitution, which are the same provisions cited in his petition for post-conviction relief. *See* Appellant's November 22, 1993 Brief at 27.[3] In his 1993 brief, Stidham raised the arguments of improvements while in prison. He argued that he did not have any conduct write-ups in prison, obtained his

---

[3] The State did not include a copy of Stidham's 1993 brief in the record. However, Ind. Evidence Rule 201 provides that we "may judicially notice . . . the existence of . . . records of a court of this state."

G.E.D., and participated in a substance abuse program and religion classes. Stidham also pointed to the abuse he suffered as a child.

[22] In responding to Stidham's arguments, the Indiana Supreme Court issued an opinion in July 1994 which held:

> Appellant points out that he was resentenced after the second trial nearly two years after his first trial and that during that period of time he was incarcerated in the Indiana State Prison. Appellant contends that, in sharp contrast to his behavior prior to his original sentencing, his behavior in prison had been exemplary, that he had obtained a GED, and that he actively participated in a substance abuse program as certified by a letter to Judge Dailey from Linda Poe the substance abuse supervisor at the institution.
>
> Appellant further states that the record discloses he was an abused child, a fact which should be taken into consideration as a mitigating factor. Although the trial judge considered these factors in rendering his sentence, he was not required to make an affirmative finding expressly negating each potential mitigating factor. *Stout v. State* (1988), Ind., 528 N.E.2d 476; *Hammons v. State* (1986), Ind., 493 N.E.2d 1250.
>
> Given the extreme brutality of the crimes committed in this case, the trial judge was well within his discretion in refusing to mitigate the sentences either on appellant's subsequent conduct in the prison or the abuse he had received as a child. As pointed out by the trial judge, two of appellant's brothers had received the same treatment but had become upstanding citizens in their community.

*Stidham*, 637 N.E.2d at 144.

[23] Based upon the arguments in his 1993 brief and in his petition for post-conviction relief, we conclude that the controversy adjudicated by the Indiana Supreme Court in 1994 determined this issue and that the doctrine of *res judicata* precludes Stidham's claim. *See Wrinkles v. State*, 749 N.E.2d 1179, 1187 n.3 (Ind. 2001) ("Wrinkles contends on post-conviction that his death sentence constitutes 'cruel and unusual punishment' because of 'unfair and unreliable sentencing procedures.' We reviewed Wrinkles' death sentence on direct appeal and found it to be appropriate. To the extent Wrinkles now seeks to relitigate the appropriateness of his death sentence, his claim is barred by res judicata."), *cert. denied*, 535 U.S. 1019, 122 S. Ct. 1610 (2002); *Allen*, 749 N.E.2d at 1178 (holding that issues raised by the petitioner were barred by *res judicata*); Marts *v. State*, 478 N.E.2d 63, 64-65 (Ind. 1985) ("The precise issue, i.e. whether his sentence constituted cruel and unusual punishment in violation of the State and Federal Constitutions, regardless of how it is now phrased, was presented to this Court and determined adversely to his position in his direct appeal. Hence, the issue was not reviewable in a subsequent post-conviction proceeding.") (citations omitted).

[24] To the extent Stidham's claims are based upon improvements since 1994, he is essentially requesting a sentence modification. At the time Stidham filed his petition for post-conviction relief on February 8, 2016, Ind. Code § 35-38-1-17 was titled "Reduction or suspension of sentence," and subsection (k) provided:

> This subsection applies to a convicted person who is a violent criminal.[4] A convicted person who is a violent criminal may, not later than three hundred sixty-five (365) days from the date of sentencing, file one (1) petition for sentence modification under this section without the consent of the prosecuting attorney. After the elapse of the three hundred sixty-five (365) day period, a violent criminal may not file a petition for sentence modification without the consent of the prosecuting attorney.

[25] In his 1993 brief, Stidham asserted that his sentence was unconstitutional, and the Indiana Supreme Court rejected the claim. Accordingly, despite his argument to the contrary, Stidham is essentially requesting a modification of his sentence. *See Marts*, 478 N.E.2d at 65 ("In the case at bar, however, this Court had previously determined that the sentence was not unconstitutional, *Marts v. State*, 432 N.E.2d [18, 22 (Ind. 1982)], the only ground upon which Petitioner claims error; hence, he is clearly requesting a modification, not a correction, of his sentence."). Stidham does not allege that he filed a petition for sentence modification or that he had the consent of the prosecuting attorney. Accordingly, we cannot say that Stidham filed a proper modification of his sentence pursuant to Ind. Code § 35-38-1-17(k) or that the post-conviction court had the authority to modify the sentence. *See id.* (holding that the post-conviction court had no authority to modify the petitioner's sentence following the time limit in Ind. Code § 35-38-1-17 and "in light of the fact that the Post-Conviction Rules do not provide for modification of a sentence which has been

---

[4] Ind. Code § 35-38-1-17(d) defines a "violent criminal" as a person convicted of murder.

established by the Legislature as appropriate for the offense and which has been found to be constitutional").

[26] For the foregoing reasons, we reverse the post-conviction court's grant of Stidham's petition for post-conviction relief.

[27] Reversed.

Pyle, J., concurs.

May, J., concurs in result with separate opinion.

State of Indiana,

*Appellant-Respondent*,

v.

Matthew Stidham,

*Appellee-Plaintiff*.

Court of Appeals Case No.
18A02-1701-PC-68

**May, Judge, concurring in result.**

The doctrine of *res judicata* undoubtedly performs functions essential to the success of our American legal system, as it prevents repetitious litigation that would keep parties in interminable conflict, bog down our system, and delay or prevent the administration of justice. *See*, *e.g.*, *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014) (*res judicata* 'prevent[s] repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies'") (quoting *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013)). Nevertheless, our Indiana Supreme Court has also explained:

> With due respect for the doctrine of *res judicata* this Court has always maintained the option of reconsidering earlier cases in order to correct error. "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence

of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work manifest injustice.'" *State v. Lewis* (1989), Ind., 543 N.E.2d 1116[, 1118] (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817, 108 S. Ct. 2166, 2178, 100 L.Ed.2d 811, 831 (1988)). Finality and fairness are both important goals. When faced with an apparent conflict between them, this Court unhesitatingly chooses the latter.

*State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994).

[29] Our understanding of juvenile offenders and of the factors to consider when determining an appropriate sentence for juveniles have changed greatly in the twenty-five years since seventeen-year-old Stidham received his 141-year sentence:

> In holding death sentences and mandatory life without parole sentences for those under the age of eighteen to be unconstitutional, the United States Supreme Court has underpinned its reasoning with a general recognition that juveniles are less culpable than adults and therefore are less deserving of the most severe punishments. *See Graham* [*v. Florida*], 560 U.S. [48,] 68, 130 S. Ct. 2011 [2010]. This presumption that juveniles are generally less culpable than adults is based on previous and ongoing "'developments in psychology and brain science'" which "'continue to show fundamental differences between juvenile and adult minds'" in, for instance, "'parts of the brain involved in behavior control.'" *Miller* [*v. Alabama*], [567 U.S. 460, 471-72,] 132 S. Ct. [2455,] 2464 (quoting *Graham*, 560 U.S. at 68, 130 S. Ct. 2011). The Supreme Court has discerned "three significant gaps between juveniles and adults." *Id*. First, "[a]s compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility.'" *Graham*, 560 U.S. at 68, 130 S. Ct. 2011 (quoting *Roper v.*

*Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L.Ed.2d 1 (2005) (quotation omitted)). Second, "they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure,'" *Id.* (quoting *Roper*, 543 U.S. at 569, 125 S. Ct. 1183), and "they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings." *Miller*, 132 S. Ct. at 2464 (alteration in original) (quoting *Roper*, 543 U.S. at 569, 125 S. Ct. 1183). Finally, "a child's character is not as 'well formed' as an adult's . . . and his actions [are] less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Id.* (alteration in original) (quoting *Roper*, 543 U.S. at 570, 125 S. Ct. 1183). "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Graham*, 560 U.S. at 68, 130 S. Ct. 2011 (alteration in original) (quoting *Roper*, 543 U.S. at 573, 125 S. Ct. 1183). Even justices not finding categorical Constitutional violations in these juvenile cases agree with this precept. *See Graham*, 560 U.S. at 90, 130 S. Ct. 2011 (Roberts, C.J., concurring in the judgment) ("*Roper*'s conclusion that juveniles are typically less culpable than adults has pertinence beyond capital cases."); *Roper*, 543 U.S. at 599, 125 S. Ct. 1183 (O'Connor, J., dissenting) ("It is beyond cavil that juveniles as a class are generally less mature, less responsible, and less fully formed than adults, and that these differences bear on juveniles' comparative moral culpability.").

Consistent with the [United States] Supreme Court's reasoning this Court has not been hesitant to reduce maximum sentences for juveniles convicted of murder. In *Carter v. State*, we reduced to fifty years a fourteen-year-old's maximum sixty-year sentence for the brutal murder of a seven-year-old girl, recognizing among other things his young age. 711 N.E.2d 835, 836-37 (Ind. 1999). In the case of a sixteen-year-old who brutally beat his adoptive parents to death while they slept, we reduced a maximum 120-

year sentence to eighty years. *Walton v. State*, 650 N.E.2d 1134, 1135, 1137 (Ind. 1995). And in *Widener v. State*, 659 N.E.2d 529, 530 (Ind. 1995), the seventeen-year-old defendant and his two eighteen-year-old cohorts planned to rob a woman as she made a night deposit after work. In executing the crime, the defendant fired multiple shots at the victim, killing her. In the days after the robbery the perpetrators spent the proceeds of their crime at the mall, going to the movies and out to eat. Finding additional mitigating circumstances not recognized by the trial court, we concluded the defendant's seventy-year sentence was manifestly unreasonable and reduced it to an aggregate term of fifty years. *Id*. at 530-31, 534.

Similar to a life without parole sentence, Brown's 150 year sentence "'forswears altogether the rehabilitative ideal.'" *Miller*, 132 S. Ct. at 2465 (quoting *Graham*, 560 U.S. at 74, 130 S. Ct. 2011). Indeed, Brown's sentence essentially "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the [juvenile] convict, he will remain in prison for the rest of his days.'" *Graham*, 560 U.S. at 70, 130 S. Ct. 2011 (quoting *Naovarath v. State*, 105 Nev. 525, 779 P.2d 944, 944 (1989)).

*Brown v. State*, 10 N.E.3d 1, 6-8 (Ind. 2014). Thus, were we able to consider the merits of Stidham's argument, it may be that his 141-year sentence is inappropriate in light of his offenses and character.

[30] However, Stidham challenged his sentence on 8th Amendment grounds in his 1993 appellate brief and our Indiana Supreme Court addressed his sentencing arguments. *See Stidham v. State*, 637 N.E.2d 140, 144 (Ind. 1994). While a court has "the power to revisit prior decisions of its own or of a coordinate

court in any circumstance," *Huffman*, 643 N.E.2d at 901 (quoting *Lewis*, 543 N.E.2d at 1118), we are not a "coordinate court" of our Indiana Supreme Court. *Cf. Inferior Court*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Any court that is subordinate to the chief appellate tribunal within a judicial system."). *And see*, *e.g.*, *American Family Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 800 N.E.2d 1015, 1022 (Ind. Ct. App. 2004) ("The trial court is not a coordinate court to this court; thus, it has no power to alter an appellate decision."). Therefore, I am constrained to concur with the majority's determination that the doctrine of *res judicata* prohibits us from reconsidering the appropriateness of Stidham's sentence.