**Benny SAYLOR, Appellant
(Petitioner below),**

v.

**State of INDIANA, Appellee
(Respondent below).**

No. 48S00–9712–PD–647.

Supreme Court of Indiana.

May 21, 2004.

Susan K. Carpenter, Public Defender of Indiana, Thomas C. Hinesley, Deputy Public Defender, Emily Mills Hawk, Special

Assistant to the State Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Stephen R. Creason, Deputy Attorney General, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

On Petition for Rehearing

BOEHM, Justice.

In 1992, Benny Saylor was sentenced to death despite a unanimous jury recommendation to the contrary. In 2002, Indiana law was changed in an important respect by requiring a unanimous jury recommendation of death before the death penalty can be imposed. Appellate courts are to review and revise sentences that are inappropriate. We conclude that it is not appropriate to execute a person who was convicted and sentenced through a procedure that has now been substantially revised so the same trial today would no longer render the defendant eligible for the death penalty. At the time of Saylor's crime, life without parole could not be imposed under Indiana law. Accordingly, we revise Saylor's sentence to a term of one hundred years.

**Factual and Procedural Background**

The factual background surrounding Benny Saylor's conviction is set forth in other opinions of this Court. *Saylor v. State*, 765 N.E.2d 535 (Ind.2002); *Saylor v. State*, 686 N.E.2d 80 (Ind.1997). On June 18, 1992, Judy VanDuyn's body was found in her van parked in a cornfield after a night of heavy rainfall. Witnesses had observed Saylor's car in the parking lot of the laundromat where VanDuyn had gone to do her laundry. When the police arrived to question Saylor, they found blood on his arms and forehead, shoes matching the prints found at the crime scene, wet clothes, and a wet billfold. At a lineup, a farmer identified Saylor as the man he had seen in the van with VanDuyn. A jury convicted Saylor of murder, robbery and confinement.

The circumstances of Saylor's sentencing and changes in Indiana's death penalty statute raise the issue before us today. Although Indiana law now provides for the possibility of a sentence of life without parole, Saylor's crime was committed at a time when the only sentencing alternatives in a death penalty case were death or a term of years. Despite a unanimous recommendation against the death penalty, the trial judge nevertheless imposed death. Saylor is one of only three people in this state currently under a sentence of death despite a jury recommendation against it.[1] None of those have been executed.

---

1. The two others are William Minnick and Christoper Peterson, now known as Obadyah Ben–Yisrayl. This Court affirmed Minnick's conviction on direct appeal in *Minnick v. State*, 544 N.E.2d 471, 482 (Ind.1989). His petition for habeas corpus is currently pending in the Northern District of Indiana. Ben–Yisrayl was convicted and sentenced to death in two separate trials in Lake County and Porter County. In Lake County, the trial court imposed death despite the jury's recommendation against it. That was affirmed on direct appeal. *Peterson v. State*, 674 N.E.2d 528 (Ind.1996). Denial of post-conviction relief was affirmed, *Ben–Yisrayl v. State*, 729 N.E.2d 102 (Ind.2000), and the district court denied his habeas petition. His appeal of denial of federal habeas is pending in the Seventh Circuit. In the Porter County case, the jury recommended death and we affirmed. *Ben–Yisrayl v. State*, 690 N.E.2d 1141 (Ind.1997). We also affirmed the denial of post-conviction relief. *Ben–Yisrayl v. State*, 753 N.E.2d 649 (Ind.2001). The Northern District of Indiana recently granted Ben–Yisrayl's petition for habeas corpus in the Porter County case, and the State has appealed. *Ben–Yisrayl v. Davis*, 277 F.Supp.2d 898, 907 (N.D.Ind.2003).

At the time of Saylor's trial and direct appeal Indiana law clearly authorized the judge to "override" a jury recommendation if the judge found the statutory aggravating circumstances to outweigh any mitigating circumstances. *Minnick v. State,* 544 N.E.2d 471, 482 (Ind.1989). Consistent with that authority, in 1997 this Court affirmed Saylor's sentence. *Saylor,* 686 N.E.2d at 89. In 2000, the United States Supreme Court decided *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that a jury must determine beyond a reasonable doubt any fact necessary to enhance a sentence. In the 2002 session of the Indiana General Assembly, in response to *Apprendi,* and anticipating that that decision might apply to the death penalty despite the contrary holding in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), legislation was introduced to cure the perceived "*Apprendi* problem" in the Indiana death penalty statute. In the meantime Saylor had been denied post-conviction relief, and on March 20, 2002, this Court affirmed the denial of relief. *Saylor,* 765 N.E.2d at 535. Six days later, on March 26, 2002, the General Assembly amended Indiana's death penalty statute to remove the express authority to impose death even if the jury recommended against it. Act of March 26, 2002, 2002 Ind. Acts 117; Ind.Code § 35–50–2–9(e) (2002). On June 24, 2002, the United States Supreme Court decided *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which overruled *Walton* and applied *Apprendi* to capital cases. The result is that under current Indiana law a jury recommendation against death would preclude imposition of the death penalty.

Saylor now seeks rehearing, citing the new statute as well as the logic of *Apprendi.*[2] He makes four claims: 1) his death sentence is unconstitutional in light of *Apprendi* and *Ring,* 2) the amendments to the death penalty statute should apply to him, 3) he was denied a fair trial because of undisclosed juror-witness relationships, and 4) his counsel failed to properly investigate the State's case. We resolve Saylor's claim on the basis of his first two issues, and deny rehearing on the remaining issues.

### Review of Saylor's Sentence in Light of Changes in the Law

Saylor seeks rehearing of our decision affirming denial of post-conviction relief. He points to the changes in both federal constitutional jurisprudence and in our state's death penalty statute. For the reasons given below, we revise Saylor's sentence to a term of one hundred years.

■ Both parties address the issue in part as whether *Ring* is to be applied retroactively. In *Daniels v. State,* 561 N.E.2d 487, 489 (Ind.1990), we adopted for Indiana state law the federal retroactivity analysis outlined in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Teague* deals with retroactivity on collateral review, and begins with the premise that the court should apply a "newly declared constitutional rule to criminal cases pending on direct review." *Id.* at 304, 109 S.Ct. 1060 (citations omitted). On collateral review the threshold question is whether the new rule is procedural or substantive. If it is procedural, it "is generally not applicable to those cases on collateral review, that is, those which have become final before the new rule was announced." *Daniels,* 561 N.E.2d at 489

**2.** Saylor sought rehearing on April 19, 2002. At that time the United States Supreme Court had granted certiorari but not yet decided *Ring.* After *Ring* was decided, both parties submitted supplemental briefs.

(citing *Teague,* 489 U.S. at 288, 109 S.Ct. 1060). Saylor's conviction and sentence became final in 1997 when this Court affirmed his direct appeal. This general rule has two exceptions: 1) rules which place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," and 2) those which require the observance of "procedures that . ... are 'implicit in the concept of ordered liberty,'" and "without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 490 (*citing Teague,* 489 U.S. at 307, 313, 109 S.Ct. 1060) (internal citations omitted).

The majority of courts to have considered the issue have held that *Ring* is an application of the procedural rule announced in *Apprendi,* and as such does not apply retroactively to cases on collateral review. *Lambert v. McBride,* 365 F.3d 557, 2004 U.S.App. LEXIS 6658 (7th Cir. 2004); *Turner v. Crosby,* 339 F.3d 1247 (11th Cir.2003); *Cannon v. Mullin,* 297 F.3d 989 (10th Cir.2002); *State v. Lotter,* 266 Neb. 245, 664 N.W.2d 892 (2003); *Colwell v. State,* 118 Nev. 807, 59 P.3d 463 (2002). *Summerlin v. Stewart,* 341 F.3d 1082 (9th Cir.2003) (*en banc*), *cert granted sub nom, Schriro v. Summerlin,* — U.S. ——, 124 S.Ct. 833, 157 L.Ed.2d 692, is the only case we have found that applies *Ring* retroactively. The United States Supreme Court granted certiorari in *Summerlin* on December 1, 2003. At this writing we have no definitive decision on the retroactive application of *Ring* under *Teague.* For the reasons given below we do not need to await resolution of this federal constitutional issue, and also do not address whether, even if there is no federal requirement that *Ring* be applied retroactively, Indiana may nevertheless choose to apply it to pre-*Ring* convictions as a matter of state law.

■ Article VII, Section 4 of the Indiana Constitution provides that "[t]he Supreme Court shall have, in all appeals of criminal cases, the power to . . . review and revise the sentence imposed." Appellate Rule 7(B) implements that authority: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

Sentencing decisions are highly case sensitive and are for the most part best left to the discretion of the trial court as long as the sentence comports with applicable statutes and is imposed in accordance with applicable procedural requirements. Nevertheless, the power to review and revise was expressly conferred by the 1970 amendment to the Indiana Constitution. In *Serino v. State,* 798 N.E.2d 852 (Ind.2003), this Court recently reviewed the history of Indiana appellate review of sentencing. In brief, the Indiana Constitution was amended in 1970 to recognize the desirability of encouraging consistency in sentencing in similar cases despite differences of time, place, and sentencing judge. In taking this approach, Indiana expressed a preference for the British tactic of appellate review of sentences, and did not pursue the much more severe restrictions on sentencing discretion imposed on federal courts at roughly the same time in our nation's history by the Federal Sentencing Guidelines. *See generally Walker v. State,* 747 N.E.2d 536, 537–38 (Ind.2001) (addressing prior version of Indiana Appellate Rule 7(B)); Charles J. Ogletree, Jr., *Commentary: The Death of Discretion? Reflections on the Federal Sentencing Guidelines,* 101 Harv. L.Rev.1938, 1940–42, 1957–58 (1988); Joel M. Schumm, *Survey: Criminal Law and Procedure: Recent Developments in Indiana Crimi-*

*nal Law and Procedure,* 34 Ind. L.Rev. 645, 670–71 (2001).

We have long explained that review of a death sentence must be more intensive than that required for a term of years. We reaffirm our goal of assuring "evenhanded operation of the death penalty statute" by reviewing death sentences "in light of other death penalty cases." *Cooper v. State,* 540 N.E.2d 1216, 1218 (Ind. 1989) (quoting *Judy v. State,* 275 Ind. 145, 169, 416 N.E.2d 95, 108 (1981)). Indeed, we have stated "[t]he thoroughness and relative independence of this Court's review is a part of what makes Indiana's capital punishment statute constitutional." *Cooper,* 540 N.E.2d at 1218.

Before 2002, Appellate Rule 7(B) appellate review called for revision of a sentence only if it was "manifestly unreasonable." The rule now provides that an appellate court may revise a sentence if it is "inappropriate." On direct appeal, we reviewed Saylor's claim under Article VII, Section 4 and concluded that the death penalty was appropriate under the statute. *Saylor v. State,* 686 N.E.2d 80, 89 (Ind.1997). Since that time the legal landscape has significantly changed. Even if the Sixth Amendment does not bar Saylor's execution for a pre-*Ring* crime, as a matter of Indiana state law Saylor, if tried today, could not be sentenced to death without a jury recommendation that death be imposed. Under these circumstances we conclude that his death sentence is inappropriate and should be revised.

Exercise of our Article VII powers to revise a death sentence in light of changes in the legal landscape is not unprecedented. In *Cooper v. State,* this Court revised Paula Cooper's sentence from death to a term of years because she would have been the only fifteen-year-old defendant to be executed. In Cooper's case, after she was sentenced to death two significant

events occurred. First, the legislature amended the death penalty statute so that it applied only to persons sixteen years old or older at the time of the crime. *Cooper,* 540 N.E.2d at 1219. The effective date of this amendment made it inapplicable to Cooper. *Id.* Second, the United States Supreme Court had recently decided *Thompson v. Oklahoma,* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), where, in a plurality opinion, the Court held it would be cruel and unusual punishment to execute a fifteen year old.

*Cooper* is not squarely controlling precedent for Saylor's case. First, *Cooper* was a direct appeal and Saylor seeks collateral review. It is also true that Cooper would have been both the first and the last Indiana convict to be sentenced to death for a crime committed at the age of fifteen. Saylor cannot claim he would be the only person executed despite a jury recommendation to the contrary, but he comes very close. Currently two other inmates are on death row after a judge overruled the jury's recommendation against death, but no execution has been carried out in Indiana where the jury recommended against death. There is one instance where the jury was unable to agree on a recommendation and the death penalty was carried out, *Burris v. State,* 642 N.E.2d 961 (Ind.1994); and another defendant sentenced in that circumstance remains on death row today. *Holmes v. State,* 671 N.E.2d 841 (Ind.1996). Despite these differences both Paula Cooper and Benny Saylor present situations in which the legislature, after their sentences were imposed, enacted significant changes in the requirements for the death penalty that would render them ineligible for a death sentence in a trial conducted today. Even in dealing with the death penalty not every change in the law affects earlier trials. But we conclude it is not appropriate to

carry out a death sentence that was the product of a procedure that has since been revised in an important aspect that renders the defendant ineligible for the death penalty.

In sum, Saylor is one of only three individuals currently under a death sentence despite a jury's recommendation to the contrary. By virtue of the 2002 amendments to the death penalty statute, no future executions will take place without a jury recommendation. Under these circumstances, it is inappropriate to carry out a death sentence that could not be imposed today. Accordingly, we revise the sentence to a term of imprisonment. It remains to fix that term.

Saylor was charged and convicted of murder, murder in the commission of a robbery, robbery, and confinement. The two murder convictions merge into one. At the time of Saylor's 1992 crime, the punishment of life without parole was not available in Indiana. As we noted in Saylor's direct appeal, life without parole was available only for crimes committed after June 30, 1993. *Saylor*, 686 N.E.2d at 83–84. Sentencing options for murders committed before that date were either a term of years or death. Ind.Code § 35–50–2–3 (1988). The maximum term of years for murder at the time of Saylor's crime was forty years, with up to twenty years added for aggravating circumstances. *Id.* Saylor was also convicted of robbery and confinement, both Class B felonies carrying a presumed sentence of ten years, and up to ten years added for aggravating circumstances. I.C. § 35–50–2–5.

As we noted in Saylor's direct appeal, the trial court, in imposing death, found that the State had proved two death penalty aggravating circumstances beyond a reasonable doubt: 1) Saylor intentionally killed the victim while attempting to commit a robbery; and 2) at the time the

murder was committed, Saylor was on probation after receiving a sentence for burglary. *Saylor*, 686 N.E.2d at 85. In the sentencing order, the trial court noted each of the eight mitigating circumstances listed in Indiana Code section 35–50–2–9(c). After discussing each circumstance in detail, the court expressly found that "none of the mitigating circumstances in I.C. § 35–50–2–9 were proven or established in this case." *Saylor*, 686 N.E.2d at 85.

Saylor does not challenge the court's finding of aggravating circumstances, but instead argues that there were several mitigating circumstances supported by the record that should have been considered by the court. As we held in Saylor's direct appeal, the other mitigating circumstances—that he would respond affirmatively to confinement, that he was intoxicated at the time of the offense, and that he had a troubled childhood—were not clearly supported by the record and are entitled to little weight. *Id.* at 86, 89. Accordingly, we sentence Saylor to forty years for murder, enhanced by twenty years reflecting the trial court's conclusion that the maximum penalty should be imposed. For the same reason, we revise the sentences for robbery and confinement to twenty years in each case, with all these sentences to be served consecutively. The result is a total sentence of one hundred years.

### Conclusion

This case is remanded to the trial court with instructions to enter a sentence of sixty years for murder, twenty years for robbery and twenty years for confinement, all to be served consecutively.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

SHEPARD, C.J., dissents with opinion.

SHEPARD, Chief Justice, dissenting.

As we did when the Court considered the appropriateness of Saylor's sentence during his direct appeal, we have always approached the question by examining all of the aggravating and mitigating circumstances.

Saylor's case presented two aggravating circumstances. One was that he "intentionally" killed Judy VanDuyn, whose only offense was taking her clothes to the laundromat late in the evening. The weight of this aggravator, measured by the level of Saylor's intentionality, has always seemed substantial. Saylor stabbed Ms. VanDuyn forty-five times, aiming half of these blows at her left breast.

The second aggravating circumstance was that Saylor committed the murder at a moment when the judicial system had offered him grace on the promise of good behavior: he was on probation when he killed a human being over the $22 she was carrying.

As Justice Boehm notes, both the sentencing judge and this Court have rejected most of Saylor's claims concerning mitigating circumstances. Until today, only a few of these have been found viable: a troubled childhood, consuming drugs and alcohol at the time of the offense, and a history of substance abuse. We earlier declared that, individually and collectively, these were entitled to low "if any" mitigating weight. *Saylor*, 686 N.E.2d at 89.

To these mitigating circumstances, the Court now adds the changes in the death penalty statute prompted by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). These changes had little to do with defendants situated like Benny Saylor, whose jury, after all, found beyond a reasonable doubt both the aggravating circumstances that render him eligible for the death penalty. I thus do not regard these amendments, even if one can plausibly describe them as a "mitigating circumstance", as adding enough to make Saylor's sentence inappropriate. The high level of culpability reflected in the two aggravators still more than outweigh the modest mitigators.

But so it will be. Saylor will be relieved of the penalty imposed for his 1992 crime. And, it is clear enough, so will others who are presently sitting on death row.